You will hear argument first this morning in Case 23-12-29, Environmental Protection Agency v. Calumet Shreveport Refining. Mr. Stewart. Mr. Chief Justice, and may it please the Court, this case provides a paradigmatic example of the result that the Clean Air Act's venue provision was intended to avoid. The April and June 2022 denial actions at issue here resolved a total of 105 exemption petitions filed by refineries in 18 different states within 8 judicial circuits. The agency based those denials on a new statutory interpretation and economic analysis it had not previously applied. Under the approach to venue adopted by the Court of Appeals, however, several different regional circuits would have been required to consider substantially similar challenges to the agency's approach, wasting judicial resources and creating a heightened risk of inconsistent outcomes. Congress amended the venue provision in 1977 to prevent those results. The judgment of the Court of Appeals should be reversed. I welcome the Court's questions. Mr. Stewart, are there any limits to aggregating different claims and thereby determining venue in D.C.? I don't know that there are limits to the agency's authority to publish different decisions in the same Federal Register Notice. We do think that there is some room for judicial scrutiny of whether what the agency describes as a single action should be regarded in that way. So, for example, if the agency in one Federal Register Notice disapproved a SIP proposed by the State of Ohio and simultaneously denied an exemption request for a small refinery in Louisiana, you couldn't cogently regard that as a single action, even if it was published in the same Federal Register Notice. Well, let's just take this case with the refineries. What would be a limiting principle if you could just simply aggregate decisions about refineries? I think you could. I think in this case that the agency had particularly good reasons for publishing them together because it had issued proposed denials based on a proposal to change its methodology, and it didn't want to issue the denials until it was ready to finalize the methodology, and that's why we wound up with something of a backlog. Does it have to be a change? What about an application of an existing rule or determination? I think the agency's typical practice has been to do those one at a time or in small groups when the agency is simply applying a principle of Federal law or a rule of Federal law that has previously been established and isn't likely to be contested on judicial review. But that's discretionary, isn't it? That's not a real limit. I think you're right that it is up to the agency's discretion whether to aggregate in those circumstances. Mr. Stewart, historically they've taken these one by one, and SIPs and hardship determinations have been dealt with at the regional circuit level. This is kind of a new development. Well, I think with respect to ozone transport rules in particular, that is, review of SIP provisions that purport to carry out states' good neighbor obligations to prevent downwind pollution. I think the norm in that area has been aggregation. I dealt with a bunch of SIP approvals on the circuit court, and now you've bundled them and done it differently. But up until now, these things with refineries and with SIPs have been done historically at the state level. I think you're right with respect to the refineries that they have been done seriatim in the past. So this is kind of new, and I guess I'm asking what's changed other than EPA's decision to bundle them together. I think what changed was that the agency was changing its methodology. In the Court of Appeals, the Fifth Circuit noted that EPA in these denial actions had abandoned or rejected an adjudicative methodology that had been applying for more than a decade. So it came up with this pass-through theory. That's the new development. It's partly the pass-through theory, and it's partly the statutory interpretation. On those, I guess I struggle because statutory interpretation, by gosh, I should hope EPA applies a consistent statutory interpretation across the country. And when it comes to economic theories, same goes. Otherwise, it would be arbitrary and capricious. So how can it be that that's what we should look at? Well, I think turning for a second to the third prong of the statute, the based on a determination of nationwide scope or effect. In our view, the word determination has the implication of resolving a question that was previously unsettled. Sure, and every statutory interpretation in economic theory is going to do that, right? At some time, but I think, for instance, if this court in 2025 struck down an act of Congress as unconstitutional, you wouldn't say that the court determined in that decision that it had the authority to review acts of Congress for constitutionality. Well, I guess I'm just struggling with, you know, you're trying to a complete sea change in how these things have been reviewed in the past. And when I look at the determination, it's an action and a determination. And I look at, what is it, 7545, right? And the action is, of course, here, you're rejecting a hardship application. And the determination is, I mean, it's right there in the statute. The secretary has to determine whether there's disproportionate economic harm to this particular refinery. And so when I'm looking for a determination, why wouldn't I look to the statute where it uses the very word? I mean, that's certainly one determination, but the agency in this context and others may be making different subsidiary determinations. I accept that that determination of undue hardship is going to rest upon a statutory interpretation and an economic theory. But how far back does somebody have to go in the chain of reasoning behind the determination that there's no undue hardship to determine where to bring their suit? This court has traditionally said that venues should be easy to figure out at the outset of a case and shouldn't involve undue litigation. Now you're asking parties to not just look at the action, the rejection of the application, not just the determination that there is no undue hardship, but the analysis behind that, right? And I think you used the word core, core analysis behind it, and figure out what's the core behind the determination and an action. I guess I'd say two things. The first is that EPA, in a case like this one, and typically, at the time it takes the action, will express its own view about where any challenges should be brought. Oh, sure. EPA has its view, but we've got a statute here, friend. It's certainly true. They've got their view, too. My point is simply that, with respect to that point, is simply that the litigant is not kind of starting from square one. The litigant knows what EPA's view about proper venue is. Yeah, it knows the government would like to always win. Sure. Okay. But when it's supposed to be determining where to bring its suit, it has to now look not just at the action and the determination that went into the action, but the reasoning behind it and figure out what part of its core. How is that consistent with this court's repeated admonitions that venue's supposed to be easy to determine at the outset of the case? Well, clearly Congress wanted there to be a meaningful role for the D.C. Circuit, not just in reviewing the actions that are enumerated as nationally applicable. Sure. It also wanted regional circuits. I mean, it's a cooperative federalism system, the Clean Air Act. It wanted room for both, and we're now trying to figure out where the line is. And you're asking us to change historical practice pretty radically, and I'm just curious how that fits with our presumption that venue should be easy to determine at the outset of the case. Well, I think that was part of the debate that went on in the 1970s after the NRDC cases that we've discussed in our brief. That is, in 1972 and 1973, there were numerous challenges to an EPA action that had simultaneously granted extensions to a number of different states for meeting a particular type of attainment deadline and had simultaneously approved SIPs submitted by the states. And there was controversy over where those cases should be heard, because although they pertain to a number of different states, the legal challenges were all the same. And both the First Circuit and the D.C. Circuit concluded that venue in that circumstance was proper in the D.C. Circuit. But the real significance of those cases is not about whether they were correct or incorrect in interpreting the statute as it existed. The real significance was, after that happened, there was a debate in the mid-1970s, and ACUS, the Administrative Conference of the United States, recommended that the statute be amended to provide that a challenge to any EPA action with respect to a state SIP would be heard in the regional circuit that contained the state whose plan was involved. And part of the justification for that approach was, as you say, ease of administration, that you would know right off what the right forum was. But the General Counsel of EPA said, in most cases, challenges to SIP decisions will rest on state-specific circumstances, but sometimes EPA SIP decisions will rest on what he referred to as generic determinations of nationwide scope or effect. And so, Mr. Stewart, I think the answer to Justice Gorsuch's question is that the statute is focusing people's attention on what the EPA's reasons are, at least in that third prong. Yes. Where is that? I see that they have to focus on the action and the determination. I don't see that they have to focus on the reasons behind the determination. Well, when we talk about an action based on determinations, we are talking about the determinations are the reasons. The action is denying the application, correct? Yes. And to determine whether to deny or grant the application, you have to decide whether it's undue hardship. That's the statute's language, right? That's the statute's language. That's the determination. You determine that there's no undue hardship here, right? But there could also be determinations about what does the term undue hardship mean? Oh, sure. You've got lots of reasons for reaching your determination. But I think what Congress was trying to drive at and what the EPA General Counsel had in mind was, you are correct that in every case, the EPA is going to be applying some kind of general federal rule or policy or framework to local facts, or at least for any locally or regionally applicable action, you'll have some of both. And the venue provision will work best if cases are routed to the D.C. Circuit when the general methodology is likely to be the subject of the judicial challenge. Because those are the cases where you have the greatest risk of duplicative judicial resources and inconsistencies. Can I say it in another way, that the venue provision appears to be designed to direct challenges that will turn on local facts and issues to the local circuits and challenges that turn on national facts and issues to the D.C. Circuit? Now, I know that's very generalized, but to the extent that the challenge in this case and other cases are, for example, or is, for example, to the EPA's economic analysis, which it drew in this case from national market evaluation and it applied to all of the different refineries this national economic analysis, one might think that that's the kind of determination of national scope or effect that the third prong at least wanted directed to the D.C. Circuit. I think that's right, but the additional point I would make is it matters a lot whether EPA's statutory interpretation and economic analysis are new or whether this is the way that the agency has been doing it for 10 years. Why is that? It's that way because if the agency has been doing it that way for 10 years, then it's very likely that any potential challenges to the methodology will have brought, been resolved, they will have been sorted out. And at that point, if EPA is applying a 10-year-old regulation that was challenged in the D.C. Circuit but upheld, it's very unlikely that the new action is going to be attacked based on the asserted invalidity of the rules. How is a litigant supposed to figure that out? So you're saying, okay, when they're new, theories of statutory interpretation or new economic theories of nationwide impact, it goes to the D.C. Circuit. But if they're old, then I can bring it in my own circuit where I actually live and operate and work. Is it a 10-year cutoff? I mean, 10 years is supposed to be simple. And I guess I'm trying to figure out what simple rule would you have us apply here? Well, one of the things you can look at is, is there some metric by which you conclude the validity of the rule has been established? Was it challenged before and upheld? Has the time for challenging it passed? Another is you can look at the comments that EPA received on the proposed action because not everything but a lot of what EPA does, it issues a proposed action and then it takes comments and it responds to the comments. And here it was clear from the comments that EPA received that any judicial challenges were likely to be attacks on the methodology predominantly. I think what would help me, Mr. Stewart, is if you talked in a bit more concrete terms about this case. And again, focusing on the third sentence, the action based on a determination of nationwide scope or effect. What was the determination of nationwide scope or effect that you are saying drove all of these decisions? The two determinations of nationwide scope or effect that we've emphasized are, first, the statutory interpretation, the requirement that the economic hardship come from the blending requirement itself and not from other economic circumstances. And the second was the pass-through theory, the presumption that generally small refineries can pass their cost of compliance along to their customers. And how responsible were those two findings taken together for the actual determinations made? All of the petitions were denied. Now, it's true that EPA, with respect to the pass-through theory in particular, gave each refinery an opportunity to rebut the presumption and show that its own circumstances were different, that it couldn't pass through the cost. But certainly the challenges in the various litigated proceedings have focused predominantly on the validity of the nationwide determinations. They haven't primarily been... What would you have to do to rebut the presumption? I mean, is that a very high bar? Is that why it wasn't met in any case? I would think it's a pretty high bar. So your essential argument here is like, look, there's the statutory interpretation plus there's this, what did you call the other one? The economic analysis. The economic analysis that together was basically determining what decision was going to be made in all these cases. There was a way for you to come back and say it shouldn't happen here, but not really. And given that, everybody would want this to be done in one court because one thing was driving all of these decisions across the country. Yes, exactly. Picking up on that, what if one of the refineries wanted to challenge both the EPA's denial of the presumption in their favor, like the non-zero chance that the circuit caused it to say, you know what, you should have given me an exception because I can show that I uniquely experienced hardship, as well as the economic theory and the statutory interpretation. So does it depend on how the refinery styles the challenge? It doesn't depend on how the refinery styles the court challenge because the determination, I mean, EPA's decision that the third prong applies has to be made at the time it takes the action and has to publish that finding in taking the action. And so it may depend in part on what sort of comments EPA received during the rulemaking because that may alert it that it is resolving something that is contested. But the right forum thereafter doesn't depend on what particular mix of challenges a particular refinery wants to make. Thank you, counsel. Justice Thomas? Justice Alito? Well, there are a couple of points about your argument that I would appreciate some clarification. Some of them have been touched on, but just to make them presented in simple terms, when do you think an issue is sufficiently settled so that decisions based on that no longer involve a determination? Well, we've referred to the fact that the denials here were issued roughly contemporaneously with the announcement of the determination itself, and we've also referred to the fact that the comments indicated that the nationwide determinations were likely to be the subject of challenge. I don't think, frankly, that there is a time limit. But I think what the Court should be trying to get at is kind of what is the likelihood? Are these determinations sufficiently new? Are they sufficiently unestablished that they can be expected to be the focus of judicial challenge? Because that doesn't seem to be a very clear rule. Maybe the application of it here would be clear, but going forward in other cases, that certainly doesn't seem to be clear whether it was sufficiently established so that anything that happens later is not a new determination. I mean, I think one thing we would offer is with respect to the standard of review here, we certainly think the question of what is the test, what is the basic standard for applying the third prong, that's a question of statutory determination that the Court decides de novo. And so we disagree with respondents' interpretation, but the question whether they're right or wrong, their interpretation, but the question whether they're right or wrong is for the Court to decide. If the Court accepts our basic framework that the test should be were these determinations sufficiently new that they are likely to be the subject of judicial challenge, then I think it would be appropriate to give some deference to EPA's determination in that regard, because EPA would know the record, it would understand to what extent was it departing from its past methodology, what had the comments been, and... Okay, thank you. Why should it matter in making this determination whether EPA decides what makes one, takes one action by itself or bundles a bunch together? I don't think it particularly matters for purposes of the third prong. That is, for purposes of the first prong, the question is whether the action is nationally applicable, and that depends on whether the action that EPA announces is the not denial of a lot of petitions or the denial of one. I think for purposes of the third prong, the analysis would be the same regardless of whether there's bundles. So you can't just, EPA can't just say, look, we're deciding cases from five different circuits or a number of different states, and they fall into five different circuits. That shouldn't matter at all. It doesn't matter for purposes of the third prong. The question is, even if you think of the action as being the denial of a particular refinery's petition, if that action is based on a determination of federal law that's likely to be challenged in court, that's an appropriate case for the D.C. Circuit to exercise review. What do you think based on means? I wasn't exactly clear from your brief. At some points you seem to say it's but-for causation, and then at another point you say it must lie at the core of the agency action. Which one is it? We would say but-for causation. That's typically the meaning that the court ascribes to the term based on, but if the court wanted to have a slightly more stringent test, it's really the principle that we care most about rather than kind of the exact formulation of the standard. I know the validity of the pass-through theory is not before us, but just out of curiosity, is that being challenged? If so, what is the status of the challenge? Well, it was challenged in both the D.C. Circuit and the Fifth Circuit because a lot of these cases wound up in the Fifth Circuit. But both of those courts ruled against EPA on that issue, and in our motion to hold the briefing schedule in abeyance in this case, we noted that EPA is reconsidering the methodology it's using. I don't have any updates on that, but that's what we've represented to the court previously. Thank you. Justice Sotomayor? I am having almost an impossible time understanding how you answered Justice Thomas' question to say that there is a limit that's subject to some form of judicial review on your decision to bundle that's not tied directly to the third prompt, meaning I don't see how you can bundle unless you meet the third prompt, because the first prompt requires an action, and the action, whether it's a national action or an individual action, and if it has to be an individual action, I don't see how you can make it national without the third prompt. Well, I think even if EPA was simply applying to new circumstances a previously established general methodology, EPA would have the authority, if it wished, to bundle in the sense of announcing in a single Federal Register notice the results of its application. I just don't see how that can be unless that action is based on a determination of nationwide scope or effect. I can't see how you can bundle a New York, and you said you can't, bundle a New York and Pennsylvania denial of a SIP and call it nationwide, absent a determination of nationwide scope or effect. I think the answer to your question turns on our limiting construction of the word determination. That is, if EPA granted or denied, let's say, four different refinery proposals in a single action, if it were simply applying its preexisting methodology, a methodology that no one was likely to challenge, but it was applying that to disparate circumstances around the country, nothing would prevent it from announcing those dispositions in a single Federal Register notice. The reason we would say those don't turn on a determination of nationwide scope or effect is that the legal principles would be preexisting and established. They wouldn't be kind of new determinations, resolution of issues. You're digging yourself into a hole because I would then say there are individual actions that you have to take to the local courts. And frankly, EPA rarely does that kind of bundling in circumstances where it isn't announcing new rules or new frameworks. We think it has the authority to, but I'll say we wouldn't lose much if the court said... Assume my assumption that I don't take any meaning from your bundling and that I think it's always an issue of what's a determination of nationwide scope and effect. What's the standard of review? I wasn't sure in the answer you gave. You talked first about de novo and then you talked about deference. So assume it's only the third part. Right. All right? What's the standard of review? I would say when you are determining what the basic test should be, the standard of review is de novo. For instance, respondents have argued that determination here is used as a term of art and it refers only to circumstances where some other CAA provision instructs EPA to make a determination or to determine something on a nationwide basis. Now we think that interpretation of the statute is wrong, but the question of whether it is right or wrong is a pure issue of statutory construction. That's something the court decides de novo. If the court concludes that we're right about the basic test, that what we are looking for is did EPA in this action announce a new principle of federal law or policy that is likely to be the subject of judicial challenge. If that basic test is correct, then we think EPA should get deference when it announces that it thinks the test is satisfied with respect to a particular action. Thank you. Justice Kagan? I don't know, Mr. Stewart. You're making this much more complicated than I came in here thinking it was. You know, the way I thought about it was if you have a set of individual actions, but they're all based on a common denominator such that you know how all the individual actions are going to come out or almost all or generally all, you know, such that state circumstances are just not playing much of a role, then it should be in one court because that's really all that is going to be up for judicial review. So whether it's old, whether it's new, I mean, you just look and you say, did one nationwide decision or two nationwide decisions in this case drive all of these individual decisions or almost all or most of them? And if it did, like you don't want 11 circuits dealing with the same question. And if it didn't, it's because there are lots of individual circumstances coming into play and relating to, you know, it's like both all mixed together so that the individual circumstances really are going to count and different decisions are going to go different ways. Then you do want them done by different courts. So, I mean, that might be just an intuitive way of dealing with it, but it seems like a lot simpler to me than what you're pitching. Well, I think part of the reason that we focused on determination as we have is the strongest, to us the strongest argument on the other side is that whenever EPA makes a site-specific determination, it is always applying some nationally applicable rule or framework or policy. If it didn't do that, the other side appropriately points out, we wouldn't have any assurance. Sure, there's always some nationwide determination in the mix, but if it's the kind of thing where that nationwide determination as applied is going to come out differently on different decisions depending on local conditions, then you don't want it in the D.C. circuit. I mean, I have a pretty strong intuition. I won't tell you what it is about both of these cases. And one goes one way and one goes the other way, because one, everything is being decided by the nationwide determination, and the other, pretty much nothing is being decided by the nationwide determination. Well, I think the nationwide determination, the new principle of law, can be very important and can arouse great controversy even if it doesn't by itself preordain what the outcome of any particular proceeding is going to be. I mean, I'd look at this court's practice, for instance. In cases where this court determines that the court of appeals has erred in its analysis, it's not uncommon for the court to announce the right analytic framework and then send it back to the lower courts to figure out how that framework applies to particular circumstances. It recognizes that its announcement of the framework doesn't necessarily foreordain the outcome. It leaves the last stage for the lower courts. But what this court is still doing is still terribly important, and the task this court is performing is the type of task for which it's important that there be centralized review, that you not have a lot of courts making the same determination of federal law without some means of bringing harmony to them, even if that determination doesn't dictate the outcome in a particular case. Thank you. Justice Horwitz? Well, harmony can also be achieved through appeal, right? Yes. I mean, the government's not afraid of litigating in appropriate forums across the country, right? That's correct. And if there are circuit splits over the meaning of the law, you know how to bring them here. Yes. All right. And so I just want to explore the two tests you've offered us, the but-for test and the core test. Those are the two. And you're happy with either one? Yes. Yeah. So the but-for test, I would think, would capture pretty much any time you have a standard statutory interpretation or economic theory, because but-for, it wouldn't have reached the result, right? Well, no. I mean, with respect to a particular outcome, you could have EPA issuing rulings in the alternative saying, under our preferred approach, the small refineries petition should be denied, but even under our old approach, this particular refinery wouldn't be entitled to an exemption. But either of those statutory interpretations would be a but-for cause of the ultimate. One or the other would have to be at least a but-for cause. Well, no. I think if you said under either approach that— Let's make it easier. I have one standard statutory interpretation I'm going to apply to all of these cases. That's a but-for cause. It would only be a but-for cause if there would be a different outcome under some alternative interpretation. Right. Okay. Yeah. Exactly. But it was a but-for cause of the denial in every case. Again, only if there would be a grant of the exemption under some alternative— Sure. Some court's going to have to decide whether that is a correct interpretation and whether there's an alternative that's preferable. But the interpretation on which EPA is relying to deny the application will be the but-for cause in every case. So it captures everything. So that's one. And then in CORE, what does CORE mean, and where does it come from? I mean, I think we were trying to get at circumstances where— We were trying to weed out circumstances where EPA, in the course of an action, may announce some principle of federal law, but it is so peripheral to the decision it's actually making that it doesn't appear likely to affect the outcome, and consequently, it doesn't appear likely to be the focus of judicial challenge. No, I get the impulse. I'm just not sure where it is in the statute. I think the word— Again, CORE, it doesn't appear anywhere. I think if EPA announced, we think this is the right statutory interpretation and economic analysis, this particular small refinery disagrees and it thinks we should use an alternative interpretation and analysis, we note that under either approach, we think this small refinery would not be entitled to an exemption. I think if EPA said that, then you couldn't conclude that EPA's preferred interpretation and analysis were but for a cause. Are we going to have a jurisprudence on CORE? How CORE is CORE? Again— Not what you're inviting us to do. No, I think if the court adopted our basic test, then it would be appropriate to give some deference to EPA's judgment about how integral to its overall analysis was a particular principle of law. Thank you. Justice Kavanaugh? On the reason for all of this in the first place, Congress's reasons for all of this in the first place, obviously it wasn't just harmony. I thought it was also—but correct me if I'm wrong—speed. Yes. And therefore, American businesses, which have to make multimillion-dollar decisions on all of this, have some certainty more quickly about what the rules are, because they will say, you know, we don't care whether the rule is A or B. I mean, they do care, but tell us what the rule is so we can make our investment decisions and our business decisions. Yes, and that's reflected not just in the provision for centralization in the D.C. Circuit, but in the short—the 60-day time limit for seeking review. It's reflected to an extent in the fact that you go straight to the Court of Appeals in the first place. Part of the reason for kind of skipping a potential layer of judicial review was to get these things resolved quickly. And so if EPA is told that it's wrong, it can go back to the drawing board. If EPA's methodology is upheld, then it can decide what's the next incremental step from that. The fact that we're having this argument, though, suggests that Congress might have missed the mark on that. But anyway, that was the idea, right? Then on ease of application, which Justice Gorsuch rightly raises, I just want to zero in on the deference point. Your point there is when, I think, when EPA makes and publishes and says it's making something based on a determination of nationwide scope or effect, that itself will receive deference. Again, if you think that EPA is applying basically the right standards— Assume that, then it gets deference in how it applies it in a particular case, which helps with respect to ease of application. Yes. Okay, and then if it does go to the D.C. Circuit and the D.C. Circuit rules for EPA—I just want to make sure you agree with this— obviously, there won't be a circuit split on anything, so when it comes to this court on cert, we need to be more attentive to cases like that than we might be in certain other cases. I agree, and it's kind of like the Federal Circuit and patent cases, that with respect to categories of litigation that can't produce a circuit split, then obviously the court is going to take cases, even when some of the usual metrics for what's a cert-worthy case are absent. Good. Thank you. Justice Barrett? Just to crystallize your position, Mr. Stewart, can you point me to the best textual and contextual evidence that a determination is this unsettled issue of statutory interpretation rather than the decision that the underlying hardship exception doesn't apply? I mean, I think that the basic reason that the two shouldn't be equated is that the statute refers— this is at the kind of the carryover sentence from 31A and 32A of the appendix to the government's brief. It says, notwithstanding the preceding sentence, a petition for review of any action referred to in such sentence, namely an action that is locally or regionally applicable, may be filed only in the United States Court of Appeals for the District of Columbia if such action is based on a determination of nationwide scope. The distinction, the use of the words action and determination, you would say, is your best evidence. Yes, and the linkage based on indicates that the two are not the same thing. Okay, and then relatedly, when you've been talking about length of time and how we decide whether something is settled or not, I mean, these were denied in two batches, one April and one June, on the same basis of the same, say, determination of the economic theory and the statutory interpretation. Why were the ones in June, then, in the government's view, not based on something that was already settled, or were they? I think they weren't. I mean, for one thing, the other metric or criterion that we've identified for identifying things that are determinations, things that are the resolution of a controversy, is did EPCA receive comments on the proposed action that indicated disagreement with the determination? And that was as true for the refineries whose petitions were denied in June as it was for those that were denied in April. In both instances, EPA was told by the petitioning refineries that we're not just disagreeing with the application of your methodology to our circumstances, we're disagreeing with the methodology itself. Okay. Justice Jackson? I guess I'm just trying to understand your statutory interpretation. Are you saying that the action that was taken here was a nationally applicable one at prong one, such that that's why it goes to the D.C. Circuit? Yes. I mean, we're making two arguments. Our first argument is because this was the denial of 21 small refinery exemptions rather than only one, it was nationally, and the refineries were spread out all over the country, it was a nationally applicable action and it goes to the D.C. Circuit under prong one. But then we're also arguing in the alternative, if instead you view the action as a matter of law as separate denials of 21 different petitions, we would say each of those denials falls under prong three because each denial was based on a determination of nationwide scope or effect. All right. So going back to the prong one issue, help me to understand your argument. I mean, if the EPA had issued each of these denials on a separate piece of paper, would you still say that they belonged on the D.C. Circuit? No. I mean, I think our argument does depend on the proposition that you attach a lot of weight to the way that EPA frames its action. And so if on the same day we had issued 21 separate Federal Register notices saying we're applying the same methodology but we're engaging in 21 separate denial actions, we would say those are not... What about the statute or Congress's reasons for enacting it or the way that it works makes you think that Congress intended for this to turn on the formality of the EPA's determination in that way? Well, it refers to the action that EPA takes, and I think to a degree that the application of prong one will necessarily depend at least in part on formalities. That is, if EPA had first promulgated a regulation that said, here is our new statutory interpretation, here is our new economic analysis, in subsequent decisions we will apply this interpretation and analysis to different refineries, the regulation itself would clearly have been nationally applicable. It would have been a nationwide rule, and it would have been challengeable only in the D.C. Circuit. But I thought you said if they said that and then they had separate papers saying that, they would be local. No, perhaps I misunderstood the hypothetical. So here's the hypothetical. The EPA issues an order that consists of a single page for each refinery. Assuming that the order says we are applying this methodology and concluding on that basis that your refinery doesn't meet the criteria, if it's announcing the methodology in the same document where it announces the denial, then that would be a single state-specific action. I had in mind a circumstance where EPA proceeds in two steps, first promulgating the rule and then issuing separate actions that apply it to different refineries. And our point is the fact that in the denial actions here, EPA chose to announce the new methodology in the same document as its application shouldn't affect the nationwide applicability. Thank you. Thank you, counsel. Mr. Waxman? Mr. Chief Justice, and may it please the Court, the core objective of Section 307B is to avoid inconsistent rules arising from duplicative litigation in the administration of the Clean Air Act. Yet under the ruling below, eight different courts of appeals will be passing on the merits of EPA's standards for eligibility under the small refinery exemption, producing, as is already evident from the two circuits that have opined, different substantive standards, completely the opposite of what Congress manifestly intended under the National RFS Program. Now, there's been a lot of discussion about prongs one and three, and maybe some discussion without identifying it as prong two, which is the locally or regionally applicable. As to prong three, we fully agree with EPA that if the actions are deemed locally applicable, the disposition of each refinery's petition was indeed based on a determination of nationwide scope and effect. I have some different answers to some of the questions posed in particular by Justice Gorsuch and Justice Alito, which I hope I'll get to, but I want to emphasize at the beginning, picking up, I think, on what Justice Jackson's questions were alluding to, that we think that EPA's actions, whether they are considered individually or together as bundled by EPA, were nationally applicable under the first prong for two reasons. The first reason is because they announced and applied a standard for all refineries, regardless of location. This was a valid statement by EPA in these adjudications. And the second reason relates to the ubiquity of the RFS Program, where every individual exemption determines as a matter of law the renewable fuel requirement binding all non-exempt obligated parties and the total volume of renewable fuel that must be purchased, such that the legal effect of even an individual SRE adjudication is nationally applicable, insofar as it necessarily affects the blending obligations of non-exempt obligated parties and will necessarily affect the total amount of renewable fuel that is used in the United States. Now, I guess I should say I welcome the Court's questions. Mr. Waxman, one question. You say that this is a nationally applicable rule. How many refineries would have to be involved for it to be nationally applicable? Is it just more than one? So I think, Justice Thomas, in this case, since the standard announced and applied, avowedly will apply to every refiner, wherever it is located in the United States, regardless of location. That is nationally applicable. I don't think, nothing in our submission, I hope this gets to your question, depends on whether you agree with us and the House report that any legal issue that can be adjudicated in two different circuits is nationally applicable under the first prong, or you agree with my friend on the other side that it has to be all 50 states. The point here is that when EPA announces and adopts a standard, either in a regulation or other final action, that it says will apply to petitioning refineries, regardless of location, that is national. Now, I don't think, just anticipating my friend's argument, that the rule, that it cannot be that it has to apply to all 50 states in order to be national. That is completely inconsistent with the manifest purpose of the 1977 amendments, and it is also manifestly not true because there are many provisions of the Clean Air Act that don't apply to all 50 states, including the renewable fuel standard. Let's just limit it to the refineries for now, small refineries. How would you know whether it is nationally applicable? Well, I think if EPA adjudicates an individual refiner's exemption application by announcing and adopting a new metric that will apply to all refiners, it is nationally applicable. Wouldn't it be just accepted that if EPA announced a rule with respect to one refinery, that it would apply the same rule to future refineries? Would that make it a national rule? Yes, I think so. That's our position. Now, I recognize that neither of my friends in this case agree with this, but I think following on what I took to be the point of Justice Jackson's questions, I don't see why it's not true. Everybody agrees that if EPA announced a regulation that said, from now on, all SRE applications are going to be adjudged under the following metric. Number one, the small refinery has to prove causation. That is, it has to prove that the disproportionate hardship that it is experiencing is due to the RFS obligation and not for some other reason. And in evaluating that case, based on our economic analyses and economic common sense, we presume that RFS, that RIN costs can be passed on to consumers. That is a rebuttable presumption. If that were done in the context of a regulation, even my friend on the other side agrees it would be nationally applicable. Mr. Waxman, here's where I need help. If you're right about that, I guess I don't understand how we ever get to prong two. It seems to me that I don't understand the distinction between one and three, meaning it seems like every case would be one in which you would say that there is a nationally applicable standard because, as Justice Gorsuch pointed out, we would hope that the agency would have consistent metrics for making these determinations. So it's sort of a given that the agency is going to be applying some standard and, in our country, a standard that is consistently applied across every applicant. So then how do we ever have a local determination in that scheme? So I think my answer to the question is the same answer to the question I would give to Justice Gorsuch's question about prong three. How can you determine that it is of national— what is the determination of nationwide scope and effect? And Justice Alito's question about, so what's the bright line? What's the metric under which you can decide that? I think the same applies to our first theory for why this is nationally applicable under prong one, which is it is not an action of a nationally applicable action, and it is also under prong three not a determination of nationwide scope and effect if it is simply applying settled law. Now, I fully—I appreciate the questions about at what point does law become settled and why does that matter for determination. In our view, law becomes settled when either there is a court ruling, and presumably it would be under prong three or prong one, or a ruling of the D.C. Circuit saying EPA is right or EPA is wrong. The application of that national standard thereafter—the application to that standard thereafter would not qualify under prong one or prong three in our view. Even in the absence of a D.C. Circuit adjudication, this statute, this very unique statute, has a 60-day limit on posed challenges to any regulation or final action. It's a pretty strict time limit that's included in the same subsection that we're deciding. And I think an argument can be made that if there is no—60 days goes by and there's no challenge, or if there is a challenge, if there is a challenge, let the D.C. Circuit decide. If there's no challenge, it's settled. And thereafter, when the EPA uses that standard to either grant or deny an exemption request, that goes to the regional circuit. The other part of my answer that I don't think—I'm not sure was fully answered in response to the questions before is what is it that—how are you defining determination? I think this was maybe Justice Barrett's question. And I think we define determination by reference to the accepted dictionary definition, which we elucidate in our brief, which is a determination is either the resolution of a particular unsettled issue or the measure of something. That's the dictionary definition of it. And we think that that dictionary definition comfortably cabins the scope and extent of the third prong. Thank you, Counsel. I am very sympathetic to the concern that venue provisions should be simple. I mean, it's the first step. It's where you go. It's not about the merits at all, and you don't want to spend a lot of time litigating that. And you suggested that your standard just recently is a simple one. In what respects do you think Mr. Stewart's proposal is not simple? Well, I think Mr. Proposal's—Mr. Proposal's—Mr. Stewart's proposal is simple. And I think it can be—prong three, with which we agree, can simply be decided by a proper understanding of the definitionary terms of what is and isn't a determination. As to prong one, while I agree with him that the relevant actions in this case are the two consolidated actions in April and June, we have proposed in our briefing two other tests under prong one that, if anything, are even more straightforward and don't depend on bundling. One is the point that I've been discussing earlier about if it is an action that announces and adopts a new standard that will be applied across the country, it is nationally applicable. The other, which in some ways is the simplest but is a real consequence of the ubiquity of the RFS standard, which was adopted long after these 1977 amendments, is that every adjudication of a small refinery exemption is nationally applicable as a matter of law because it will determine, as a matter of legal consequence, the refining obligation, the blending obligations of non-petitioning refiners. Thank you. Justice Thomas, anything further? Just briefly. Mr. Waxman, you discussed determinations a minute ago, but what would be your view of based on? I think that's important as to what content you give that. So we think that based on means essentially two things. There are two requirements for an action. The action in these cases was the denial of the exemption. Based on means that it is a but-for cause or an essential premise of the action, and that it resolves an unsettled issue or that it establishes a standard. When you have those two things, you can say confidently that the action is based on that determination. I hope that answers your question. It's the best I got. Justice Alito? Justice Sotomayor? There's a number of lower courts that have said with respect to the question of whether a denial is nationally applicable that what you have to look at is not the downstream consequences of the EPA's determination, but what is the effect on the parties? Is it a national effect or not? One of your two suggestions that I see is downstream effects. Yes, there are going to be people from each petition who might have to do something more later and something less if they're denied, but why isn't that just a pure downstream effect, and aren't we straying too far when we're incorporating that into our analysis? So I think I do recognize those opinions, and I endorse them in the sense that I think, for example, Justice Kavanaugh or then-Judge Kavanaugh had it correctly when he ruled in the D.C. Circuit that national applicability has to be determined on the face of the action. That's the case. Yes, and that practical effects, downstream effects of what is more than likely not to happen is not the crux. All parties in this case, and I think all courts, have agreed that the legal effects of the regulation or the action is, in fact, something that is viewable and consistent with the you-have-to-look-on-its-face. And with respect to the renewable fuel standard, the legal effect, not just some predictable downstream effect, the legal effect of every SRE determination extends to the national blending standard and the national volume requirements as a matter of law, and that's how I would address that. You know what bothers me about that position is you're now saying that every exemption has to go to the D.C. Circuit, whether the methodology is new or not. That's the force of that argument. So that's one of the two arguments that we're making for why this is nationally applicable, and yes, it basically acknowledges that because of the ubiquity, the way that the RFS program, as opposed to most other Clean Air Act programs, operates, it is a necessary legal effect of any denial that it will be nationally applicable in the sense that it has an inexorable legal effect on other actors and the nation's ability to meet its national renewable fuel requirement. But yes, that argument is asking for a rule across the board with respect to all exemptions. Justice Kagan? Justice Gorsuch? Mr. Waxman, do you agree that the action here is the denial of a petition to be exempt from renewable energy mandates? Well, I think I'm going to be ecumenical about what... No, I don't want you to be ecumenical today. No, I just want to know the right answer. That's the action. That's the agency action. Our view, as expressed in our brief, is that the EPA is correct, that the actions that are under review today are the consolidated April and June decisions, but that under our understanding of nationally applicable, it doesn't matter. I understand that. I understand the second part. Put that aside. Put problem one aside for now. But the actions, all right, you want to use the plural, are the denial of the exemptions from the renewable energy program, right? Yes. Okay. And to make that action, EPA had to make a determination about whether there's a particular hardship for a particular refinery. Correct? Correct. Thank you. Justice Kavanaugh? The third sentence, the third prong, the third sentence is just difficult to apply in a coherent way, because it's always going to be when you have some rule that's being applied to a particular entity in a particular state, it's going to be very difficult. So how should we handle that? So, you know, this is our law. Because to the Chief Justice's point, Justice Gorsuch, is I would like to come out of this case with something that everyone out there knows, okay, this is what we need to do. So we think that the simplest way to decide this is under the first sentence rather than the third. If we get to the third, I would say that what the court should base its interpretation on the meaning of the term determination, and that under this consistent with dictionary definitions, the determination is either the resolution of a particular issue and or the measurement of something, and that what we have in EPA's two-part test is both. The first part of the test, the causation requirement, is certainly the former, and the presumption based on EPA's experience with the data is the latter, and maybe also the former, and that so long as the validity of that two-part test is unsettled, meaning that 60 days have passed under the very next sentence in the subsection and no challenge has been raised, or a challenge has been raised but the D.C. Circuit has not yet decided it, it is still a determination as to which review should be in the D.C. Circuit. And as to Justice Barrett's question about, well, June was the second one, it wasn't the first one, so how do you deal with that? I think the answer is, I believe, I don't have a specific recollection, but fewer than 60 days passed between the late April determination and the June 3rd determination. I believe there already had been filed at least one petition for review, but even if there hadn't, it was still open for review. And the consequence of holding that it's only the first one, whether it's the first single application, as I'm intuiting, Justice Gorsuch, is inclined to rule, or the omnibus... I wouldn't be so sure. Pardon my indiscretion, my presumption. Whether it's one or the 36 that were decided in April, the notion that, well, June was not April, and therefore all 67 refineries that were disappointed by the outcome in June can go to their eight regional circuits and the D.C. Circuit to get resolution of the same legal question. Anything further, Justice Kavanaugh? Justice Barrett? Just one question. Do you think under your definition of determination, which you say is the dictionary definition of determination, that it would be a determination that the hardship exception didn't apply, kind of to Justice Gorsuch's point? You've got the action, the denial, and then you have the determination that the undue hardship exception is inapplicable to that particular refinery. I understand that the reasoning is what you're hanging your hat on, but do you agree that just by the terms of the definition, it could apply, as Justice Gorsuch suggested, to the determination that there was not an undue hardship? I think in the vernacular sense, outside of context, you could say that that is a determination because it will always be the case that if a settled legal test says you get a benefit if you prove this predicate, a determination that you haven't proved the predicate means you don't get the benefit. But it wouldn't be a determination of national scope or effect. Thank you. Justice Jackson? So I understand the general concern about simplicity, but it appears that Congress did not share that concern with respect to this statute because it's very complicated. And I'm trying to understand your interpretation of the difference between nationally applicable and a determination of nationwide scope and effect. Are those the same or different in your view? Do they rise and fall together? Could we ever have one without the other? They are the same in this case and will perhaps often be the same, but they don't inexorably, one doesn't inexorably require the other. And I'll give you an example each way. A regulation or guidance that is issued by EPA is not a prong three issue. It is nationally applicable. It is not locally or regionally applicable. Likewise, SIP denials, that is state implementation plan denials, are not only specifically listed under the second prong, but courts have recognized, and Justice Gorsuch underscored with his questions today, they are the paradigmatic local or regionally applicable determination because it just asks the question, did this state plan satisfy the state's requirements under the national ambient air quality standards? But the courts have recognized repeatedly that if in the course of denying or granting a SIP application, EPA adopts a new rule. EPA says, well, there's a new NAC requirement for ozone, and you haven't met it. Those cases all go to the D.C. Circuit, and that's the example that General Counsel Frick was addressing in his comments in 1977. Thank you. Thank you, Your Honor. Thank you, Counsel. Mr. Houston. Mr. Chief Justice, and may it please the Court. The Clean Air Act's venue provision requires the Court to look to the text of the chapter to determine whether an EPA action is nationally applicable or is instead locally or regionally applicable and what that action was based on. When EPA, for example, uses a rulemaking to set requirements for all regulated parties wherever they're located throughout the nation, that's a nationally applicable action. But the relevant text of the chapter here, section 7545.09, makes it clear that EPA's actions on hardship petitions must be locally applicable. You can find that text on page 23A of our red brief. Unlike the pre-2011 regime where all small refineries throughout the nation were entitled to an exemption, the text now requires each individual refinery to make its own case for hardship relief. Quote, that refinery must demonstrate that it would be subject to a disproportionate economic hardship. And the text then reinforces the requirement of individualized action by keying EPA's deadline to act to the submission of each individual petition. These actions were locally applicable because each EPA action on a hardship petition affected only one refinery located in one place. And the actions were required by the text to be based on each refinery's economic circumstances, not any determination affecting the entire nation. EPA moved past theory and produced final agency action only by analyzing these six small refineries' individualized evidence of their disproportionate economic hardship. To be sure, we think EPA's analysis of those economic factors was wrong on the merits. But the important point for venue purposes is this. Analyzing the evidence of local economic conditions facing small refineries in San Antonio, Texas, and Shreveport, Louisiana, is a task that Congress assigned to the Fifth Circuit, not the D.C. Circuit. I welcome the Court's questions. But the argument would be if EPA develops a new rule and applies it to the refineries, that that is a nationwide rule. At least that's how I understand their argument. Justice Thomas, I think EPA is very clear in this case. You can see this at PETA 330 in the denial decisions. They say this is not a rulemaking. If EPA wanted to promulgate a new analytical framework and centralize review of that framework in the D.C. Circuit Well, let's say a new framework for determining whether or not the exemption applies to the small refineries. Yes, understood. And I think what I'm saying is if EPA wanted to set that new framework for adjudicating small refinery hardship additions, it could use a rulemaking to do so. EPA consciously chose not to use its rulemaking authority here. It expressly invoked only its adjudication authority. It did so for a very particular reason. This is April and June of 2022. EPA is adjudicating hardship petitions from 2018, 19, and 20. They're retroactively denying petitions submitted three years earlier. It would have been illegal under black-letter administrative law for EPA to put out a new rule that retroactively denied old hardship petitions. EPA, however, could make a determination that's national in scope and effect. How is that different? So EPA, I think they could make a rule that would say this is how we interpret the statute. This is what we want future small refineries to demonstrate when they're petitioning for hardship relief. And if they use their rulemaking authority, I think that's going to be a nationally applicable action. But that was not the final actions here. EPA said these are adjudications of these hardship petitions. And the right text, I think the simple way to answer the third problem, the third sentence, there's been a lot of talk today about how can we simplify this. Here's the easy answer to how you determine what an action was based on. You look at what the text of the chapter required it to be based on. And here the text tells you when EPA produces this kind of final action, the denial of a hardship petition, that denial has to be based on a conclusion about whether the refinery is experiencing disproportionate economic hardship. Counsel, give me meaning to three. Three basically says that something that would otherwise be looked at as locally or regionally applicable. It says notwithstanding that, that there are some, if the action is based on, seems to me that you have to give that a difference. Tell me outside of an announcement of a regulation or new rule, some action that EPA could take that's local on its face, regional on its face, one application, but could still fit the third exception. So if I might just, I want to answer your question directly, Justice Sotomayor, but before doing so, I just want to observe that neither the government nor we have been able to locate any Clean Air Act case where venue has been decided solely on the third prong. So I think this has always been intended to be... Yes, but that doesn't answer the question. Congress had in mind something. When I try to figure out what Congress has in mind, I look at, some of my colleagues don't, but I look at the legislative history to tell me what the examples were that they were dealing with.  And they were dealing with something very similar to this. And then they created the third sentence. So you give me another reason for the third. Justice Sotomayor, so let's talk directly about what Congress had in mind. As the government... No, tell me how you would read it to give it meaning. Sure. I think in a circumstance for a statutory provision like the one that then EPA General Counsel Frick brought to Congress and said, this is why we need the third sentence. That was an instance in which the statute authorized EPA to grant individual extensions to individual states, but that was based on a, quote, determination about the technology that was available throughout the nation. Why isn't that indistinguishable from this? Because, Justice Jackson... I mean, the determination here was based on a national survey economic understanding of how these markets work. Justice Jackson, the EPA produced an economic hypothesis. That's what RIN costs pass-through was. I understand, but it was nationwide in scope. It seems to me to be exactly the same thing that you just read in terms of the examples that were before Congress as to the reason why the third sentence was needed. So I appreciate your argument about the first sentence, the first statement. It seems quintessentially local. They're making individualized hardship determinations. But in making them in this context, when they're doing the localized analysis, they are applying an evaluation or an assessment that is a nationwide economic analysis. But that was not the basis for their determination at the end of the day. Their determination was that this refinery, each of them, individually, you and you and you and you... Right, but then I'm back to Justice Sotomayor's question. If you're defining determination as just the answer, do you get it, then you're never going to have a situation in which you have a localized assessment that has a nationwide scope or effect, because you've now eliminated the idea that the reasons being nationwide count. You say it can't be nationwide if the answer, the determination, is yes, you get it, no, you don't. And that's going to happen in every one of these cases. Justice Jackson, I think it's important to separate what is the action and what determination is it based on. Here, I think I've taken my friends to agree, the relevant action is the denial of the hardship petition that was submitted by the Calumet-Shreveport Refinery for itself. What was that action based on? Here, the statutory text tells you it was based on EPA's conclusion that the Calumet-Shreveport Refinery is not experiencing disproportionate economic hardship. Won't that always be the case, and this is not meant as a hostile question, but won't that always be the case when a local or regional action is taken affecting the local or regional entities, even though there's a nationwide rule it's applying? In other words, it's always going to be applying a nationwide rule or regulation, as Justice Gorsuch said, to something local. And you're saying when it's being applied, it's no longer based on the nationwide determination. I think that's what you're saying. So it'll really have no effect, and maybe that's the answer. I'm not sure you should shy away and you've said it's never been applied. Maybe the answer is it's inconsistent on its face and it just really has no impact. Is that where we end up? And I'm not saying that's where we shouldn't end up, just to be clear. Justice Kavanaugh, I think it was always intended to be a narrow exception to the rule for locally applicable actions, which is they're meant to go to the regional circuits and get review there. There have not been hardly any. We can't find a single example where a court has adjudicated a Clean Air Act venue dispute and said this case is locally applicable, but it goes to the D.C. Circuit because of the third sentence. I'm not trying to tell you it's impossible that there could be, and I think that the sentence But you can't articulate a good example which maybe it is impossible. So I will give you one more that we have thought of that I think comes closer to this and that a court has suggested would get there, which is there was something called the Alternative Compliance Demonstration Approach. It's discussed in these papers. It was issued at the same time as the April and June 2022 denials. And what EPA said is although we're denying these 2018 hardship petitions, that was so long ago that to attempt to ask those refineries to retire RINs now would really have a destabilizing effect on the RIN market and the RIN bank. And on that basis, they created an alternative path to compliance for those refineries. That to me looks closer to like a locally applicable determination. They're telling each refinery what they want them to do, but it's based on a conclusion about the RIN bank overall. Well, why isn't this case the example here? I mean, you have these individual denials. It is you and you and you and you. But it turns out that all these you and you and you and yous are going to come out the exact same way. And the reason that they're going to come out the exact same way is that notwithstanding all the differences among the you, you, you and yous, that there are local circumstances, there are local conditions, notwithstanding all of those, EPA has reached two conclusions that are going to drive the analysis in every case, or pretty much every case. And in that circumstance, that seems like a perfect case for a single court to adjudicate the question. Justice Kagan, EPA did not make a determination that drove the analysis. EPA said it, quote, for how we expect small refineries operation. Well, here's a determination. I mean, it's a statutory determination that hardship has to stem from the renewable fuel program. And it's an economic determination that everybody can recover their RIN costs. And that's a totally, like, normal understanding of what the determination means. So you have a statutory determination, you have an economic determination, and those determinations taken together are going to produce the exact same outcome in every case, no matter what the individual local situations and circumstances are. So, Justice Kagan, I would love an opportunity to talk about both of EPA's purported determinations, but let me go right to the very end of your question. It is not the case. EPA emphatically denied in the lower courts, and they deny here, that it was true that those determinations, their statutory interpretation and their economic theory were sufficient to decide the hardship. Well, they gave you an opportunity. They gave all the different yous an opportunity to rebut what they said. It's very nice that they gave you that. Nobody was able to come up with anything to rebut what they said. Maybe in some crazy circumstance there could have been a rebuttal. But what you basically know about what EPA has done here is that it's going to apply the same way in Ohio and New York and Alabama. And so, in that circumstance, you don't want the 6th Circuit and the 2nd Circuit and the 11th Circuit to be all deciding the same question. You want one court to be deciding the question as to whether the EPA conclusions are correct. Your Honor, I would urge the court to take a look at the start of page 277 in the joint appendix, really moving to the next 50 pages. That's 50 pages of analysis that EPA produced just for the 6 refineries that are before you today to say nothing of the many, many more refineries that were in this case. The opportunity to rebut the presumption was not just like some pro forma thing that didn't actually mean anything. There's pages and pages and hundreds... Was any of those pages, were they ever successful in rebutting the presumption? No, EPA concluded that it, after looking at every individual refinery's evidence, that it believed that these refineries were, in fact... I think EPA gave you every reason to think that at the start, that this was going to be a super high bar to rebutting the presumption. But once EPA made this statutory conclusion and this economic conclusion, the game was pretty well done. And so, who is it that we should want to address those conclusions that it's doing, if not all the work, almost all the work? Justice Kagan, again, I really respectfully disagree with your characterization of the fact that there was not meaningful study by EPA of the individual economic evidence submitted by the refineries. And I would just say, take EPA at their word on this point. They say, on the face of the actions, we completed a thorough evaluation of the data and information provided in the SRE petitions. They go on and on and on. And again, there's hundreds of pages, cumulatively, of analysis where EPA looks at the refinery-specific factors, the San Antonio refinery and how small it is, and the lots that it can buy RINs, the RIN contracts that Placid has, and the situation facing Calumet Shreveport with its competition in the Gulf Coast. EPA walks through each of this, and they say, here's why that doesn't persuade me, and this doesn't persuade me, and the like. We certainly disagree with them about what they heard. You know what they said? They said, this doesn't persuade me. Because they had already decided, subject to somebody coming up with something super unusual that they hadn't thought about. They had already decided. And that decision was a uniform one that stretched from one end of this country to the other. Your Honor, I think what they very clearly had was an economic presumption. They said, we've got a presumption. We're giving you an opportunity to rebut it. Why are we doing that? Because we have to. The law compels us to give you this opportunity. And we took advantage of it. We submitted voluminous evidence. EPA says that it studied that evidence, and that, I think, had to be the basis. I'm going to ask you a question. We've had a lot of talk about how it's important for venue rules to be clear. And given what Justice Kagan just said, EPA made very clear this was going to apply nationwide. And it was fundamentally shifting the way that it treated small refineries. Could you have determined, or why couldn't you have determined, at the outset of the suit, that the D.C. Circuit was the right venue? Why wouldn't there be clarity when you have that kind of national determination? Well, Your Honor, I suppose the clearest possible rule would just be that whatever EPA says is the right venue is the right venue. But I don't think that that's the venue rule that this statute requires. I agree with you. I agree with you. But given the existence of this determination on the economic theory and the statutory interpretation, and maybe the answer is, you know, it wouldn't have been clear to us. But, I mean, given the importance of the clarity of venue rules, I just want to understand why it wouldn't have been clear to you. Maybe it would have, and you just didn't want to be in the D.C. Circuit. I think it wouldn't have been clear because if you are Ergon Refinery, you're a refinery, one of the respondents before you, located in Vicksburg, Mississippi, and your argument is, we produce 100% diesel fuel, and it's because we only produce diesel that we are economically burdened, that we face disproportionate economic hardship from the RFS, that's an argument that you would naturally think, when EPA rejected my evidence, when EPA said to Ergon, that doesn't persuade us. Ergon, I think, quite rationally said, we want the Fifth Circuit, our home circuit, to have an opportunity to address the circumstances of our market. They refused because the EPA is saying to you, we have a national rule. It doesn't matter whether you're in Ergon, the national rule is, we presume you can. We presume that you can pass the cost on, and we presume that you have to show us hardship that doesn't have to do with your diesel fuel, but has only to do with relying on this, or being forced by this regulation to buy the credits you need. Your Honor, EPA said we have an economic hypothesis that when we look at your evidence, related to your diesel disparity, related to, if you're Calumet Shreveport, the intense competition. Let's go back to Justice Barrett's question, which is, you knew that they were basing it on two national presumptions. Why doesn't that tell you? Way to go. Because we looked to the text of the statute, which said whether... The text tells you the EPA has some form of discretion or ability, the EPA has the ability to make a determination that this has a national effect. So you've got a determination that says, the EPA believes this has a national effect, one prong of the requirement, and the second is we're basing it on national presumptions. Your Honor... So what's hard about understanding you go to D.C.? What's hard about it is that you're taking refineries that want the opportunity to have their local economic evidence that is their case for hardship relief. You're begging the question. I know the EPA wants national. The question is what Congress wanted, not what you wanted or the EPA wanted. The question is what Congress wanted. And I kept asking you at the beginning, given the way they structured this third category, they are saying that some local actions have to go to the D.C. Circuit. Yes, there is a... So why isn't the answer that when the EPA makes a determination and says we're basing it on two national presumptions, that clear enough? Two points about that, Your Honor. The first is that it does not suffice, as I think even the government agrees, for EPA to just make a finding that an action is based on a determination of nationwide scope or effect. The action has to actually be based on a determination of nationwide scope or effect. That's written directly into the text of Section 707. Those are the presumptions. That is their presumption. What do you make of that, the fact that Congress specifically says that the administrator has to make that finding? I mean, doesn't that tell us that Congress really cared about what the agency thought in this way? I don't think so, Justice Jackson. What I take that to mean is that EPA has the opportunity to maintain locally applicable actions in the D.C. Circuit. I think the Congress probably foresaw that you get, once you start talking about what was the basis of the action, was it core or not, is it, according to my friend, new but still insufficiently settled, it gets pretty metaphysical pretty quickly to decide what the basis was of an EPA action. I think what Congress was thinking was, in any EPA action, there's going to be a description by the agency of the interpretation of its statutory authority, the basic framework through which it filters the individual facts. I think Congress wanted to ensure that the agency has some control to avoid, to maintain locally applicable actions in their regional circuit where they're supposed to be. That's why I think the deference question is really important, and Mr. Stewart said that the agency, and Justice Sotomayor was just following up on this, the agency should get some deference. Should they get any deference, in your view, or how does that work? So, recall that the text has two requirements in order for the third sentence to be activated. First, the action must be based on a determination of nationwide scope or effect, and if, in taking such action, the administrator finds and publishes that such action... So, if it's found and published, does the agency get deference, some deference, on the question of whether it is a determination of nationwide scope or effect? I think with respect to the agency's making of that finding, I think that's textually committed to the agency. So, I don't think it's generally subject to judicial review. You can't say, the agency didn't actually make this finding, but on the... On the key part. You're talking about the part that's not key. Talk about the key part. No, no deference at all. No deference at all. Absolutely not. It's a legal question for the court. They set it out as a separate legal requirement. That sentence, that first clause... But if that standard, if we have a set definition of what's a determination, ordinary administrative law would say, when you apply that set standard to a given set of facts, that that gets some deference. But not in a situation, Your Honor, I think where Congress has actually required the legal issue to be resolved, and then said, in addition, the agency has to make a finding with respect to that. You're saying the ordinary deference that it would get is taken away by the second sentence, or the second part of the sentence, that requires the publication and finding? That's correct. I think the structure of the sentence only makes sense. That first clause only makes sense if that's a legal determination for the court. In other words, if both the court and the agency have to agree that the action is based on a determination of nationwide scope or effect. Now, that's going to make the third sentence... When a venue issue arises, it arises because both parties to the dispute think they would be better off in a particular forum. And isn't it very odd to say that the court, in deciding whether there's venue in one place or the other, should defer to the view of one of these parties who are contesting the right to get home court advantage? I certainly agree with that, Justice Alito. And I think, just to put a sharper point on it, if, in fact, it were the case that Congress wanted there to be any deference to EPA's venue determination, it could have just written the third sentence to say, the action goes to the D.C. Circuit if EPA finds and publishes that it's based on a determination of nationwide scope or effect. Suppose EPA's economic theory is that... We think that there will almost always be... I mean, we think that the small refineries are always going to... As far as we're aware, they're always going to be able to pass through these costs. But, you know, we can't say that it's inconceivable that some small refinery could come up with some reason that we haven't been able to think of why they wouldn't be able to do it. You know, it's like saying, we really think that no Martian has ever landed here, but, you know, we're not going to say we're going to close our minds to the possibility that somebody could prove it. If that's the situation, then what would your answer be? I still think I'm going to have to end up with the same answer, which is that even in that situation, the statutory text of the chapter compels EPA to perform an examination of whether each petitioning small refinery does or does not experience disproportionate economic hardship. But, notably, the situation that you describe, Your Honour, is very different from how EPA acted here. And again, I just think, take EPA at their word. EPA said, we have an economic theory for how we expect small refineries' operations to be affected. We then analyze the most current data available to determine whether finished fuels markets move in the way that economic theory predicts. So, for example, counsel, if EPA had put its economic theory in a rule and promulgated that rule, the challenge to that would have to be in the D.C. Circuit. Almost certainly, yes, Your Honour. And then its application in later licensing applications, you would be kind of foreclosed on that, but you might have a local challenge otherwise. Yes, I think that's basically right. I think that's how generally administrative law works. That's how I remembered it. An agency uses its rulemaking authority to pronounce how it understands the statutory framework and what its adjudication... That rule would be maybe locally applicable, but it would be nationwide effect. And so the EPA could sign off on that and off to the D.C. Circuit. Yes, Your Honour, but it would be an invocation of the agency's rulemaking authority. But the problem is that that's what the third exception says. It says that the court is giving the EPA adjudicatory authority to find and publish that such an action is based on a determination of nationwide scope and effect. So Justice Gorsuch is talking about what the norm is, but they didn't have to create the exemption 3 at all. They could have just stayed to 1 and 2. Your Honour, I think that the purpose of the exception, as we discussed earlier, is for a certain kind of unusual Clean Air Act provision where the text of the chapter directs EPA to make a determination about the whole country. But that's not how this provision of the chapter works. Or it could have a rule, perhaps, that wouldn't be nationwide, nationally applicable, but would be regionally applicable. And perhaps that might wind up, that rule might be reviewed in the D.C. Circuit. Or it applies to an industry or whatever. Certainly if it applies to the whole industry, it says this is how we're going to regulate stationary sources or power plants, wherever they're located throughout the nation. Even if it isn't all across the nation. It doesn't have to be the whole nation. Of course, that's exactly right. If there's no refineries in Rhode Island, a rule that regulates all refineries is still clearly nationally applicable. But consider the sort of absurd textual consequence of my friend's position. The Kansas City Metropolitan Air Quality Control Region. When EPA promulgates a regional air quality action for that region, my friends say, well, that's actually a nationally applicable action. It's not a regionally applicable action because it just happens to touch more than one state and more than one circuit. I think that's just brutally hard to square with the ordinary meanings of the term nationally and regionally. To come back to the third sentence, I think the easiest way to understand that third sentence is number one, to just keep in mind that the instructions that the court gives about it need to maintain it as a narrow exception because it's supposed to be an exception to the general rule for locally applicable actions. And then I think the easiest way to cut through the metaphysical questions about what was involved in the process of every EPA action that it might take is to simply ask, when you're looking at the text of the chapter, when you're looking for what was this final action under this chapter based on, go consult the text of the chapter and see what it directed EPA to base that action on. And here, that leads to a very simple answer because Congress directed EPA, when it takes this kind of action, to base that action on its consideration of a refinery's local economic circumstances. And that's what this refinery, that's what EPA did according to the agency's own description. Thank you, counsel. Justice Thomas? Justice Weaver? Justice Sotomayor? Mm-hmm. Justice Kavanaugh? On that last point, which I think is a good point for you, it does, I think most cases are going to end up that way. And so the third sentence ends up being a null set or close to a null set in your view. And that's fine if that's the case. I just want, is that how you see it playing out? It's been essentially a null set historically. It has, Your Honor. And I would really urge the court not to breathe enormous life into this third sentence because I think to do so would very significantly disrupt the balance that has prevailed in the lower courts. Now, obviously we're here because the lower courts can benefit from some guidance about the application of this venue provision. But it has absolutely been the case that since 1977 this third sentence has been extraordinarily narrow. The government hasn't been able to come up with any case. We haven't identified one. And, you know, we've looked. It's not for lack of trying. It's hard to come up with something that fits this. I think that's okay. And just for last question, just so I say it again, it's because when a local or regional action is based on a determination of nationwide scope or effect, the application of that to the particular local or regional entity will mean it's being applied. It's not based solely on the nationwide scope, determination of nationwide scope or effect. Is that right? I'm not certain I understand the question. Well, you're saying it can't happen, that it's based solely on the determination of nationwide scope or effect because it's being applied to the particular entity, right? Yes. Yes, I think that's right. It has to be applied. In order to adjudicate. In other words, to justice courts, it's not like a rulemaking. It's being applied. It's an adjudication. Correct. In an adjudicatory posture, it is almost always going to be the case that the action, a locally applicable action, will be based on the local facts and circumstances of the individual petitioner. That actually makes perfect sense because remember the enumerated sections of Section 7607 that Congress assigned as locally applicable, they all have that form. They're all adjudications of local factors. They're not rulemakings, unlike the enumerated nationally applicable actions. Exactly. Okay, thank you. Justice Barrett? Justice Jackson? But, of course, the statute could have said something about rulemaking versus adjudication. I mean, I appreciate the distinction that you're making, turning a determination of nationwide scope or effect into something akin to a rulemaking, but that's not what it says. I'm not trying to say, Justice Jackson, that it can only be a rulemaking. What I am saying, though, is that when you look at the structure of the overall venue provision, Congress said here are some things that we are designating as national. Here are some things that we are designating as local. The national things, they all pretty much are rulemakings or they look a lot like rulemakings. The locally designated things that Congress assigned all are either individualized adjudications. I think that's a strong clue about how Congress expected this provision to work. Right, and then you're reading the exception to say that if you are then applying some sort of standard to the individual case in the context of an adjudication, then it's being based on the facts of that case and can never really be considered to be based on a determination of nationwide scope or effect. Well, the third sentence cannot be triggered any time EPA is basing its individual action on a nationwide standard. I understand, but you flip all the way to the other side. You're saying it's never triggered because you are just applying it to the facts of the particular case. I'm saying it's very rarely triggered. That's why it's an exception to the general rule. Thank you. Thank you, counsel. Rebuttal, Mr. Stewart. Thank you, Mr. Chief Justice. First, Mr. Houston said that we haven't found a case in which a court of appeals has upheld an EPA-prong-free finding, but I think there are a fair number of cases in the D.C. Circuit in which you have a pattern like this. EPA announces a new framework, it applies the framework to a number of different states or regulated entities, says we regard this as nationally applicable, says we find also that it's based on a determination of nationwide scope or effect, and parties sue in the D.C. Circuit, and because there's no dispute about venue, the D.C. Circuit decides the case on the merits without issuing an opinion that addresses the question. I think that's the explanation for why you don't have published decisions that endorse our view of prong-free. I think it's equally true to say that Mr. Houston hasn't identified a case in which EPA has made a prong-free finding and a court of appeals has rejected it. So I think that adopting his rule would significantly change prevailing D.C. Circuit practice, even though it wouldn't overturn any D.C. Circuit-published opinions. The next thing I'd say is, I think there's an analogy here between prongs one and three and the types of cases this court decides. That is, sometimes this court decides cases that present facial challenges to an act of Congress or a challenge to the validity of a nationwide executive branch program, and the bottom-line disposition of the case will have national impacts. But there are also cases that this court reviews that present purely local disputes. Really, nobody but the parties cares who wins and loses on the bottom line, but the case presents a legal issue that has divided the courts of appeals and is being litigated all over the country, and it's important to have centralization. And that's the type of thing that prong-free is for. The local disputes that present recurring questions of federal law. There was a colloquy about, does it make sense to give deference to the view of an interested party as to where the case should be heard? Well, we know that Congress wanted EPA to have some role in determining venue because it allowed the EPA to make a prong-free finding or not. And under our view, the two things that will be important are, did EPA regard what it was doing as the resolution of a controversy, or was it simply stating an undisputed proposition of federal law? And second, how integral was that proposition to the ultimate decision? Those are two things that are right within EPA's bailiwick. It makes perfect sense to give deference to them. Finally, we agree that prong-free should be an exception, that most locally or regionally applicable actions should be reviewable in the regional circuits. But if the exception doesn't apply here, where nationwide determinations drove all of the site-specific actions and where the attack on the nationwide determinations has been the focus of judicial challenges, you're basically reading prong-free out of the statute altogether. Thank you. Thank you, counsel. The case is submitted.